# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DAVANTE BENJAMIAH GREEN, | |
| Plaintiff, | No. C18-0029-LRR |
| vs. | |
| WILLIAM SPERFSLAGE, MIKE HEINARCY, PAUL NEMMERS, TRACY DIEETH, SHAWN HOWARD, CARRIE CARSON, BENNY SAVALA, CO HAWKINS, MATT EIVINS, DIMITRIUS BOWENS, AARON SHARR, DR. VRBA, and WARDEN WISE, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

_____

This matter is before the court pursuant to defendants' motion for summary judgment (docket no. 7).

## I. PROCEDURAL HISTORY

Plaintiff filed this case on March 9, 2018. In his pro se complaint, plaintiff, who is incarcerated, alleged that the defendants failed to protect him from another inmate who assaulted him. On September 3, 2019, the court conducted an initial review and allowed plaintiff's claim to proceed. Defendants filed an answer on November 4, 2019. (docket no. 5). Defendants filed their motion for summary judgment on March 6, 2020. (docket no. 7). The plaintiff did not file a resistance.

## II. FINDINGS OF FACT

Along with their motion for summary judgment, defendants filed a statement of undisputed facts. (docket no. 7-2). Plaintiff did not file a resistance to those facts, nor did he file his own statement of facts. "[A] failure to respond to an individual statement

of material fact, with appropriate appendix citations, may constitute an admission of that fact." *See* LR 56(b); *see also* Fed. R. Civ. P. 56(e). Therefore, the court will treat as admitted the facts set forth in defendants' statement. Thus, the following facts are undisputed.

Plaintiff is an inmate at Iowa Department of Corrections (IDOC). When plaintiff entered the IDOC on March 30, 2017, he was housed at the Iowa Medical and Classification Center. He was then transferred to the Clarinda Correctional Facility. In November of 2017, IDOC officials at the Clarinda Correctional Facility initiated a transfer because of plaintiff's disciplinary issues. The IDOC transferred plaintiff to the Anamosa State Penitentiary (ASP) on December 1, 2017, where he remained until February 4, 2019.

Keep Separate (KS) orders are the type of order used by the IDOC to note when inmates may have a conflict with each other or be a danger to each other. These orders are governed by standard IDOC policy. Pursuant to that policy, each inmate may name or identify other inmates who may pose a risk to them. Once an inmate identifies a potential threat, the IDOC investigates to see if a KS order is appropriate.

When plaintiff entered the IDOC, he self-reported Angel Garcia, a co-defendant in his state criminal case, as a person he should be separated from. Per the standard policy, a KS request was issued pursuant to plaintiff's self-reported information about Garcia. IDOC employee James Brown conducted an investigation and determined that a KS order was not appropriate, because Garcia did not testify against plaintiff in the state criminal case, they were not kept separate in county jail, and Garcia was not then in the same facility as plaintiff.

In November of 2017, the IDOC began the process of transferring plaintiff to ASP. IDOC documentation shows that an IDOC employee, defendant Carrie Carson, reviewed plaintiff's self-reported request to be kept separate from Garcia because Garcia was at ASP. Carson interviewed Garcia about Garcia's relationship with plaintiff. Garcia

2

indicated there would be no issues between himself and plaintiff. Based on that interview, Carson concluded that Garcia was not a threat to plaintiff.

On December 6, 2017, IDOC officer Justin Hawkins, a defendant in this case, was escorting plaintiff across the ASP yard. Plaintiff was handcuffed and shackled. Garcia approached them and, in a surprise attack, punched plaintiff in the face. Garcia attempted to continue to assault plaintiff, but Hawkins quickly deployed pepper spray to subdue Garcia. Hawkins physically separated plaintiff and Garcia, and placed Garcia on the ground. Numerous additional officers responded and within a minute of the initial punch, plaintiff was escorted to safety.

Defendant Tracy Dietsch, who is the treatment director at ASP, reviewed the events leading up to the assault of plaintiff, and determined that IDOC employees acted appropriately. Following the assault, a KS order was issued to keep Garcia away from plaintiff, and it remains in place today.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show'" an absence of a genuine dispute as to a material fact. *Hilde v. City of Eveleth*, 777 F.3d 998, 1003 (8th Cir. 2015) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1157 (8th Cir. 2016) (quoting *Gazal v. Boehringer Ingelheim Pharm., Inc.*, 647 F.3d 833, 837-38 (8th Cir. 2011). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record]… which it believes demonstrate the absence of a genuine issue of material fact.'"

3

*Torgerson*, 643 F.3d at 1042 (alternations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324).

On a motion for summary judgment, the court must view the facts "in the light most favorable to the nonmoving party." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Ricci*, 557 U.S. at 586 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts'...." *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita*, 475 U.S. at 586). Instead, "[t]o survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Williams v. Mannis*, 889 F.3d 926, 931 (8th Cir. 2018) (third alteration in original) (quoting *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011)). Mere "self-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010). "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003).

### IV. ANALYSIS

In his complaint, plaintiff alleges that the defendants failed to protect him by transferring him to ASP despite him self-reporting his co-defendant, Garcia, as a potential

threat.[1]  In their motion for summary judgment, defendants make two arguments.  First, the argue that defendants were not deliberately indifferent in failing to protect the plaintiff.  Alternatively, they argue they are entitled to qualified immunity.

> The standards regarding prison officials failing to protect prisoners is well settled.
>
> Because being subjected to assault is not "part of the penalty that criminal offenders [must] pay for their offenses," *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the eighth amendment's prohibition against cruel and unusual punishment requires prison officials to "take reasonable measures to guarantee" inmate safety by protecting them from attacks by other prisoners, *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation marks and citations omitted).  Of course, prison officials do not commit a constitutional violation every time one prisoner attacks another.  *See id.* at 834, 114 S.Ct. 1970; *Blades v. Schuetzle*, 302 F.3d 801, 803–04 (8th Cir. 2002).  In order to establish an eighth amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a "substantial risk of serious harm."  *Farmer*, 511 U.S. at 828, 114 S.Ct. 1970.

*Young v. Selk*, 508 F.3d 868, 871–72 (8th Cir. 2007).  The well-known deliberate indifference standard requires a two-part analysis.  The first part of the test is objective and asks whether the inmate was under a sufficiently serious threat.  *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010).  The second part is subjective and requires the court to consider the defendants' state of mind.  *Id*.  An official is deliberately indifferent if he or she knows of a substantial risk and fails to respond reasonably.  *Id*.  Under that standard, an officer is not deliberately indifferent if they took reasonable steps to abate the threat.  *See Schofield v. Hopkins*, 491 F. App'x 772, 774 (8th Cir. 2012) (unpublished), *citing Norman v. Schuetzle*, 585 F.3d 1097, 1107 (8th Cir. 2009)

---

[1] Although Hawkins, the officer with plaintiff at the time of the assault, is listed as a defendant in this case, the complaint makes no specific allegation against Hawkins.  Rather, plaintiff states the failure at issue in this case was IDOC "accepting me" to ASP. (docket no. 4 at 4).

5

*overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). (no failure-to-protect violation where prison official with knowledge of threats against inmate informed supervisor and noted threats in logbook).

Even viewing the allegations in the light most favorable to him, plaintiff has failed to allege a claim that can survive summary judgment. The only document plaintiff filed in this case is his original complaint. (docket no. 4). The complaint claims various defendants "put in for a transfer that jeopardized my safety" and then "knowingly accepted me to a prison that jeopardized my safety." *Id.*, at 4. However, there are no facts in evidence that any defendant had any involvement in approving plaintiff's transfer. Rather, the undisputed facts show that IDOC employee James Brown was solely responsible for approving plaintiff's transfer to ASP. (docket no. 7-3 at 11). Additionally, Brown made the decision to deny a KS order between plaintiff and Garcia, and there is no indication that any defendant with knowledge of plaintiff's concern about Garcia was involved in the transfer decision. Accordingly, if anyone were liable for plaintiff's allegation that being transferred to ASP put him in danger, the proper defendant would be Brown.[2]

However, even if plaintiff had named a proper defendant, plaintiff failed to allege sufficient facts to sustain a claim of deliberate indifference. First, plaintiff presented no allegations, much less any specific facts, that he faced a serious risk of harm. Plaintiff's allegation is that there was a "known keep separate from my co-defendant Angel Garcia."

---

[2] Defendant Carson interviewed Garcia prior to plaintiff's transfer to ASP for the purpose of determining whether Garcia posed a risk to plaintiff. Carson determined, based on Garcia's answers, that Garcia was not a risk to plaintiff. But absent any contrary factual allegation, there is no reason for the court to find that interview and Carson's findings were anything but reasonable. *See Lytle v. Gebhart*, 14 F. App'x 675, 679 (7th Cir. 2001) (unpublished) stating, "[o]fficials who take reasonable steps to prevent a known harm to a prisoner cannot be held liable for subsequent injuries even if the harm is not averted. *See Farmer*, 511 U.S. at 844; *Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir.1997)." Moreover, there is no information in the record that Carson was involved in the actual transfer decision.

6

(docket no. 3 at 4). But that statement is not true. The undisputed facts only show that plaintiff advised IDOC officials that "[Garcia] should be kept separate, because [plaintiff] reports Garcia testified against him in court." (docket no. 7-3 at 18). That is not a threat, much less a specific threat. That is merely a statement plaintiff did not want to be housed with Garcia. Merely requesting to be kept sperate is not sufficient to put defendants on notice that plaintiff was at risk for serious harm. *See Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998) (affirming dismissal of a complaint alleging failure to protect where plaintiff "did not effectively alert [defendants] that he faced [] a threat."). Accordingly, plaintiff has failed to create a material dispute of fact that defendants were aware that there was a serious threat of harm to him as required by the objective prong of the deliberate indifference test outlined above. *See Patterson v. Kelley*, 902 F.3d 845, 852 (8th Cir. 2018) (to make an inference that there was a serious risk of potential harm, there must be some evidence to show that the defendants were exposed to facts revealing that risk).

Similarly, even if plaintiff alleged a serious risk of harm, plaintiff failed to show that defendants were intentionally indifferent to that risk. As another court observed in a similar case:

> [a]lthough a prison official may bear some responsibility for placing an inmate in danger through an improvident transfer, such official is not liable under the Eighth Amendment unless the official was consciously indifferent to the danger posed by the transfer or specifically intended the transfer to result in the "wanton infliction of unnecessary pain." *Johnston v. Lucas*, 786 F.2d 1254, 1260 (5th Cir. 1986).

*Brown v. Armendariz*, No. CIVA 307CV2154-O BH, 2009 WL 812156, at *9 (N.D. Tex. Mar. 26, 2009). In this case, there is no factual basis to believe any named defendant had anything to do with approving plaintiff's transfer to ASP. Accordingly, it

7

Case 1:18-cv-00029-LRR-MAR   Document 8   Filed 03/22/21   Page 7 of 8

is not possible for plaintiff to allege that any specific defendant was indifferent to the threat plaintiff faced by being transferred to ASP.[3]

Because defendants are correct that plaintiff failed to allege any facts that could show that they were deliberately indifferent to a substantial risk of serious harm, plaintiff's claim that defendants failed to protect him fails. Defendants' motion for summary judgment must be granted.[4]

## V. CONCLUSION

For the reasons set out above, defendants' motion for summary judgment (docket no. 7) is **granted** and this case is **dismissed**.

**IT IS SO ORDERED.**

**DATED** this 19th day of March, 2021.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[3] There is no general rule prohibiting co-defendants from being housed together. *Castillon v. Corr. Corp. of Am., Inc.*, No. 112CV00559EJLCWD, 2015 WL 13732323, at *25 (D. Idaho Dec. 3, 2015) (noting there is no per se rule against housing co-defendants together).

[4] Because the plaintiff failed to create a factual issue about the failure to protect claim, the court need not consider defendants' alternate argument that they are entitled to qualified immunity.

8